IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA )
)
VS. ) Cr. No. 07-106-01S
)
JESUS GONZALEZ )

GOVERNMENT'S TRIAL MEMORANDUM

I. The Indictment and Elements

The indictment charges JESUS GONZALEZ with conspiracy to distribute and possess with the intent to distribute 500 grams or more of cocaine and a quantity of marihuana in violation of 21 U.S.C. § 846 (Count I), possession with the intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 18 U.S.C. § 2 (Count II), and possession with the intent to distribute a quantity of marihuana in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(D), and 18 U.S.C. § 2 (Count III).

The elements of Count I are as follows:

First, that the conspiracy charged in the indictment existed between at least two people to distribute and possess with intent to distribute controlled substances; and,

Second, that the defendant willfully joined in that agreement.

If the jury finds the government proved each of the above

two elements beyond a reasonable doubt, then they must answer the following questions:

Did the conspiracy involve at least 500 grams of cocaine?

Did the conspiracy involve marihuana?

See Pattern Criminal Jury Instructions for the District Courts of the First Circuit, §§ 4.18.371 & 4.21.841(a)(1) Comment note 2; see also United States v. Ortiz, 447 F.3d 28, 37 and n.6 (1st Cir. 2006) (affirming the district court's charge asking the jury to determine the quantity of cocaine involved in the conspiracy as a whole).

The elements of Count II are as follows:

First, that defendant on or about July 23, 2007, aided and abetted by Kristina LaFrance, possessed 500 grams or more of cocaine, either actually or constructively;

Second, that he did so with a specific intent to distribute the cocaine over which he had actual or constructive possession; and,

Third, that he did so knowingly and intentionally.

With respect to Count II, to establish aiding and abetting, the government must prove beyond a reasonable doubt:

First, that someone else committed the charged crime; and

Second, that defendant consciously shared the other person's knowledge of the underlying criminal act, intended to help him,

and willfully took part in the endeavor, seeking to make it succeed.

See Pattern Criminal Jury Instructions for the District Courts of the First Circuit, § 4.18.02; United States v. Keene, 341 F.3d 78, 84 (1st Cir. 2003).

The elements of Count III are as follows:

First, that defendant on or about July 23, 2007, aided and abetted by Kristina LaFrance, possessed a mixture and substance containing a detectable amount of marihuana, either actually or constructively;

Second, that he did so with a specific intent to distribute the marihuana over which he had actual or constructive possession; and,

Third, that he did so knowingly and intentionally.

With respect to Count III, to establish aiding and abetting, the government must prove beyond a reasonable doubt:

First, that someone else committed the charged crime; and

Second, that defendant consciously shared the other person's knowledge of the underlying criminal act, intended to help him, and willfully took part in the endeavor, seeking to make it succeed.

See Pattern Criminal Jury Instructions for the District Courts of the First Circuit, § 4.18.02; United States v. Keene,

341 F.3d 78, 84 (1st Cir. 2003).

## II. Factual Summary

The government expects the evidence in this case to show the following:

On Saturday, July 21, 2007, Detective Richard Ruggiero received information that a package express delivery service, known as DHL, was in possession of a package that suspected of containing marihuana. According to employees at DHL, they had received a telephone call from an individual stating that he was the sender of a package with DHL package identification number "65274045244." DHL located the package and identified the sender as, "Exquisite Inc., 8233 Tampa Avenue, Reseda, CA 91335" and the addressee as, "Anna Ohoven, 80 Hawkins Street, 2nd floor Providence, Rhode Island." The caller asked why his package had not been delivered. When he was told that the package was at the Cranston DHL office he stated that someone would pick it up. He later asked if DHL would deliver the package on Monday, July 23, 2007. DHL stated that it would be delivered between 9 a.m. and 11 a.m. on July 23, 2007.

On July 23, 2007, at approximately 10:20 a.m., Detective Ruggiero, in DHL uniform, attempted to deliver the package. Detective Ruggiero knocked on the door of 80 Hawkins Street, 2nd floor, but there was no response. A male, later identified as

JESUS M. GONZALEZ, came up the stairs carrying a bag and Detective Ruggiero asked if Anna was there. GONZALEZ stated that she was at work. GONZALEZ opened the 2nd floor apartment and Detective Ruggiero noticed that it appeared vacant. He informed Detective Ruggiero that Anna was his cousin, and he offered to sign for the package, but Detective Ruggiero refused. GONZALEZ then called a woman on his cell phone and spoke to her in Spanish. He then handed Detective Ruggiero his cell phone and spoke with a female who identified herself as "Anna." She agreed to come to the house to pick up that package at noon.

Surveillance noted that GONZALEZ then drove away and returned with an unidentified male. The unidentified male was driving a red BMW. The unidentified male left in the BMW and GONZALEZ left in his Crown Victoria car. GONZALEZ came back with a female, later identified as KRISTINA LAFRANCE a/k/a Anna Ohoben. The two individuals entered the 2nd floor apartment. Shortly after, GONZALEZ left again and drove approximately one block away where he waited in the Crown Victoria. From where his vehicle was parked he had a view of 80 Hawkins Street.

At approximately 12:10 p.m., Detective Ruggiero knocked on the apartment door and LAFRANCE answered. She signed for the package after spelling out the last name "Ohoben" and took the package into the apartment.

LAFRANCE was detained and Mirandized. LAFRANCE admitted

that she had been paid $100 to accept the package. She was found to be in possession of $100 cash. She stated that GONZALEZ is the brother of her boyfriend.

GONZALEZ was detained and found to be in possession of a slip of paper in his front pocket. Written on the slip of paper was the DHL package identification number and the phone number to DHL. GONZALEZ also had 2 cellular phones and in his wallet, he had two Bank of America receipts. One receipt reflected a $9,000 cash deposit on June 11, 2007 and the other reflected a $9,000 cash deposit on June 28, 2007. These deposits were made into two accounts in California in the names of other people. GONZALEZ also had the keys to the apartment on his person.

Inside the package Detective Ruggiero noted 3 smaller packages. Two contained marihuana and field tested positive for marihuana. The approximate weight was 26 lbs. The third package contained cocaine and field tested positive for cocaine. The approximate weight of the cocaine was 1,021 grams. The package contained fabric softener sheets. The drugs were sent to the Northeast Regional Laboratory where it was determined that the package had contained 943 grams of cocaine and a quantity of marihuana.

Detectives obtained consent to search 80 Hawkins Street. While searching the apartment, detectives found a handwritten slip of paper with the DHL package identification number, the

name, "Anna Ohoben," and the number, "65274045244." There were approximately 7 signatures of that name on the paper, as if someone had practiced the signature. The signatures on the paper were the same as the signature on the DHL package. Officers also found paperwork in the name of Jesus Gonzalez, glad sandwich bags, a coffee grinder with the residue of a white, cutting agent, a notebook, $3,250 in U.S. currency, and money wrappers, among other items.

On July 27, 2007, Detective Ruggiero executed a search warrant for GONZALEZ's Merecedes-Benz. While searching the car, officers found paperwork in the name of GONZALEZ, a wooden kilogram press with paperwork in the name of GONZALEZ, a bag of cutting agent, several electrical outlets with wooden blocks and a c-clamp, a wooden mortar, and a Bank of America receipt. This receipt reflects a $2,000 cash deposit on July 16, 2007. The deposit was made in Rhode Island into a California account in another individual's name. The electrical outlets with the wooden blocks appeared to be a drug press. One of the outlets contained cocaine residue.

## III. Legal Issues

### A. Fed. R. Evid. 404(b)

At this time, the government does not intend to introduce any evidence pursuant to Fed. R. Evid. 404(b).

B. Opinion Evidence

The government intends to call a forensic chemist from the DEA to testify regarding her analysis of the drug exhibits and the cutting agents. The government intends to call Detective Patricia Cornell, with the Bureau of Criminal Identification, who found fingerprints of the defendant that she found on the coffee grinder and the Glad sandwich box.

The government will also offer the testimony of law enforcement personnel, in particular Detective Richard Ruggiero, Detective Tim Sanzi, and Detective Dorian Rave, who may testify based upon their extensive experience and training in the field of drug trafficking, to the methods and operations unique to the narcotics business. The government may elicit testimony about the techniques used by law enforcement in a narcotics investigation.

Based upon their extensive training and experience, the detectives may testify to the manner in which cocaine and marihuana are manufactured, transported, sold and used. The detectives may testify to the price of cocaine and marihuana and what constitutes a distributable quantity of cocaine and marihuana. The agents will testify to the retail and wholesale value of 1 kilogram of cocaine and 26 pounds of marihuana, and that the quantity of narcotics seized is consistent with distribution.

The detectives will testify that fabric softener sheets are often used by drug traffickers in an attempt to disguise the odor of controlled substances. Detective Sanzi will testify that GONZALEZ appeared to be engaging in counter-surveillance while the package was being delivered. Detective Ruggiero, Detective Sanzi, and/or Detective Rave will testify about how the evidence seized, including but not limited to the coffee grinder, baggies, kilogram press, outlet presses, mortar, cellular phones, and cutting agent, is used in the drug business to prepare the cocaine for street sale.

The First Circuit has consistently upheld the introduction of this type of agent testimony. See United States v. Maher, 454 F.3d 13, 23-24 (1st Cir. 2006) (upholding the admission of agent testimony regarding the meaning of words and numbers used in "Post It" notes seized from the defendant's vehicle, and testimony regarding the typical packaging of narcotics); United States v. Ayala-Pizarro, 407 F.3d 25, 28-29 (1st Cir. 2005) (affirming the district court's decision to admit agent testimony regarding the packaging of narcotics and how drug points operate); United States v. Reynoso, 336 F.3d 46, 49 (1st Cir. 2003) (opinion that drug quantity was consistent with possession with intent to distribute); United States v. Villarman-Oviedo, 325 F.3d 1, 13 (1st Cir. 2003) (agent allowed to testify to meaning of code words); United States v. Rivera-Rosario, 300 F.3d

1, 17 (1st Cir. 2002) (coded drug phrases); United States v. Valle, 72 F.3d 210, 214-15 (1st Cir. 1995).

Experienced investigators may also be "permitted to testify as experts on topics such as the structure of a criminal enterprise, the economics of the drug trade, and the handling of contraband." United States v. Sepulveda, 15 F.3d 1161, 1183-84 (1st Cir. 1993); see United States v. Pinillos-Prieto, 419 F.3d 61, 71-72 (1st Cir. 2005) (allowing agent testimony regarding the dangerous nature of drug organizations and why organizational leaders as well as innocent observers are not present during the actual handoff of narcotics); United States v. Garcia-Morales, 382 F.3d 12, 18-19 (1st Cir. 2004) (agent permitted to testify regarding the structure and operation of a typical drug conspiracy); United States v. DiMarzo, 80 F.3d 656, 659-60 (1st Cir. 1996) (allowing testimony that drug dealers do not take innocent observers to drug deals); United States v. Hensel, 699 F.2d 18, 38 (1st Cir.) (general practices of drug smugglers), cert. denied, 461 U.S. 958 (1983).

Likewise, agents may testify regarding the "tools of the trade" in the drug business. See, e.g., United States v. Alosa, 14 F.3d 693, 696-97 (1st Cir. 1994); United States v. Tejada, 886 F.2d 483, 486-87 (1st Cir. 1989); United States v. Allen, 269 F.3d 842, 846 (7th Cir. 2001) (allowing expert testimony regarding "'tools of the trade'"). In addition to testifying

regarding the "tools of the trade," agents have been permitted to testify about the locations in which drug activity occurs. See United States v. Isler, 429 F.3d 19, 26-27 (1st Cir. 2005) (allowing agent testimony about the features of a drug house and that defendant's house was consistent with other drug houses); Ayala-Pizarro, 407 F.3d at 28-29 (allowing testimony regarding how drug points operate).

C. Physical Evidence

Evidence of "tools of the trade" is admissible to prove the existence of a conspiracy as well as intent to distribute. See United States v. McGuire, 389 F.3d 225, 230 (1st Cir. 2004) (judgment vacated on other grounds) ("'in drug trafficking firearms have become 'tools of the trade' and thus are probative of the existence of a drug conspiracy'"); United States v. Ford, 22 F.3d 374, 383 (1st Cir. 1994) (scales, firearms and large sums of cash are probative of an intent to distribute narcotics as they are "tools of the trade"); Alosa, 14 F.3d at 696 (drug ledgers are admissible as "'real evidence'" to prove that a drug business was conducted in a particular location, to prove the existence of a conspiracy, and to prove the dimensions of a conspiracy); United States v. Camilo Montoya, 917 F.2d 680, 682 (1st Cir. 1990).

Furthermore, the documents seized from the defendant's apartment and vehicle are admissible, non-hearsay evidence

proving the defendant's connection to the apartment and vehicle. See United States v. Serrano, 434 F.3d 1003, 1005 (7th Cir. 2006) (receipts, bills, and other documents are not hearsay when offered as circumstantial evidence linking a defendant to a particular location); United States v. Balthazard, 360 F.3d 309, 318 (1st Cir. 2004) (notes seized from the scene admissible as real evidence of a drug business); United States v. Mazyak, 650 F.2d 788, 792 (5th Cir. 1981) (letter admissible for non-hearsay purpose of linking conspirators to the location and to each other); United States v. Mejias, 552 F.2d 435, 446 (2nd Cir. 1977) (admitting hotel receipt, luggage invoice and business card to prove a link between the defendant the motel in which the drug activity occurred); see also United States v. Paulino, 13 F.3d 20, 24 (1st Cir. 1994) (rent receipt seized from the apartment containing the drugs was admissible as an adoptive admission).

D. Conspiracy

A conspiracy is an agreement between two or more persons to commit a particular crime. See United States v. Fenton, 367 F.3d 14, 19 (1st Cir. 2004). It is an agreement to disobey or to disregard the law. See United States v. Pacheco-Ortiz, 889 F.2d 301, 304 (1st Cir. 1989).

The government must prove that an agreement existed to commit the underlying offense and that the defendant elected to join the agreement intending that the underlying offense be

committed. See United States v. Medina-Martinez, 396 F.3d 1, 5 (1st Cir. 2005). But, under 21 U.S.C. § 846, the government need not prove the commission of an overt act in furtherance of the conspiracy. See United states v. Shabani, 513 U.S. 10, 17, 115 S.Ct. 382, 383 (1994). Furthermore, the government need not prove that the conspiracy succeeded or was achieved, so long as it proves that there was an agreement to engage in a criminal venture. See United States v. Waldron, 590 F.2d 33, 34 (1st Cir. 1979)(holding in an importation of stolen goods case, the "government need not prove that goods worth more than $5,000 were actually transported to make out a conspiracy . . . so long as the conspirators planned to transport sufficiently valuable goods"); United States v. Belardo-Quinones, 71 F.3d 941, 944 (1st Cir. 1995).

The government must prove that the defendant had knowledge of the basic agreement. See United States v. Marsh, 747 F.2d 7, 12 (1st Cir. 1984). However, the defendant need not have knowledge of all of the details of the conspiracy, nor of all of the participants in the conspiracy, nor of their acts. See United States v. Martinez-Medina, 279 F.3d 105, 113 (1st Cir. 2002). In fact, in a drug conspiracy, the government need not prove the defendant knew the type or quantity of drug involved, "only that the offense 'involved' a particular type or quantity." United States v. Collazo-Aponte, 281 F.3d 320, 326 (1st Cir.

2002).

Once the existence of a conspiracy is established, evidence establishing beyond a reasonable doubt a connection of a defendant with the conspiracy, even though that connection be slight, is sufficient to convict that defendant of knowing participation in that conspiracy. See Marsh, 747 F.2d at 13. The government must prove that each defendant knowingly and intentionally joined the conspiracy. See Pacheco-Ortiz,889 F.2d at 304. A defendant's knowing participation in a conspiracy may be established by proof of surrounding circumstances. See United States v. Paradis, 802 F.2d 553, 559 (1st Cir. 1986). The agreement need not be express, and may consist of no more than a tacit understanding. See Pacheco-Ortiz, 889 F.2d at id.

E. Acts of Co-conspirators

A co-conspirator is responsible not only for his own acts, but also for the acts of other conspirators done in furtherance of the conspiracy. See Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180 (1946); United States v. Rengifo, 858 F.2d 800, 807 (1st Cir. 1988). For purposes of criminal liability as a conspirator, one who joins an ongoing conspiracy is deemed to have adopted the prior acts and declarations of his co-conspirators made after the formation of and in furtherance of the conspiracy. Thus, the defendant is bound by all acts committed by co-conspirators in furtherance thereof, including

those acts committed without his knowledge before he joined the conspiracy. See United States v. O'Campo, 973 F.2d 1015, 1022-23 (1st Cir. 1992).

IV. Requested Voir Dire and Jury Instructions

The government will file its proposed voir dire questions and jury instructions under separate cover.

V. Witness and Evidence List

The government will submit a witness and evidence list under separate cover prior to the commencement of trial.

VI. Estimated Time of Trial

The government estimates that it will take three days to conduct the trial.

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorneys,

ROBERT CLARK CORRENTE,
UNITED STATES ATTORNEY

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj

**CERTIFICATE OF SERVICE**

I hereby certify that on March 27, 2007, a copy of the within "Government's Trial Memorandum" was filed electronically and is available for viewing and downloading from the ECF system.

Electronic notification:

Ms. Mary McElroy
Federal Defender's Office
10 Weybosset Street, Suite 300
Providence, Rhode Island 02903

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj