UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA

V. Cr. No. 07-106S

JESUS GONZALEZ

**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS**

Now comes the Defendant, Jesus Gonzalez, and respectfully moves that this Honorable Court suppress certain evidence that was seized from Defendant's person at the time of his arrest; evidence seized during a search of Defendant's apartment a short time after his arrest; and evidence seized during a search of Defendant's motor vehicle. Defendant further moves that this Honorable Court suppress certain statements allegedly made by Defendant at the time of his arrest, all for the reasons set forth in the accompanying Memorandum and for such additional reasons as shall be set forth at hearing on this Motion.

JESUS GONZALEZ
Defendant
By His Attorney,

/s/ Judith Crowell, Esq.
128 Dorrance Street
Fourth Floor
Providence, RI 02903
(401) 272-6600

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA

V. Cr. No. 07-106S

JESUS GONZALEZ

**MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE AND STATEMENTS**

The Defendant Jesus Gonzalez has moved to suppress evidence seized from his person at the time of his arrest, evidence seized from his apartment shortly after his arrest, and evidence seized from his motor vehicle. He has also moved to suppress certain oral statements that he allegedly made to the officers who arrested him.

I. FACTS

The Indictment alleges that, on or about July 23, 2007, this Defendant conspired to possess more than 500 grams of cocaine with intent to distribute, that he possessed the cocaine with intent to distribute, and that he possessed a quantity of marijuana with intent to distribute.

The Government alleges that on July 21, 2007, law enforcement officers were advised that a package in the possession of DHL, a delivery service, contained marijuana. On July 23, 2007 at about 10 a.m., Detective Richard Ruggerio, rather than a DHL delivery person, attempted to deliver the package to the named individual at the address set forth on the package, which was “Anna Ohoven, 80 Hawkins Street, Second Floor, Providence, RI”. When Detective Ruggerio knocked on the apartment door, there was no response. Moments later, however, the Defendant cam up the stairs and spoke briefly with Detective Ruggerio. Although Detective Ruggerio wore equipment that permitted

other officers to monitor this conversation, the equipment did not record what was said either by Detective Ruggerio or by Defendant. In any event, arrangements were made to return to the apartment at noon to redeliver the package.

After Detective Ruggerio left the building, another officer Detective Timothy Sanzi, continued to watch the building from a nearby vehicle. A short time later, the Defendant left the building and drove off in a Crown Victoria. He returned soon thereafter in a red BMW driven by another man, and they were observed entering the building together, exiting the building and driving off in the red BMW. Inexplicably, the surveilling detective failed to obtain any identifying information regarding the BMW or its operator. Defendant later returned in the Crowen Victoria with a female passenger, Kristina Lafrance, who is Defendant's brother's girlfriend. They entered the building, and soon thereafter Defendant left the building, drove his Crown Victoria a short distance, and parked. Defendant remained in the vehicle.

Detective Ruggerio returned to 80 Hawkins Street, where Lafrance responded when he knocked on the door of the second floor apartment. Lafrance signed for the package addressed to "Anna Ohoven, 80 Hawkins Street, Second Floor, Providence, RI", and was immediately arrested, as was Defendant, who was arrested outside, at gunpoint. He was placed in handcuffs and brought to the apartment, where officers claim that he made incriminating oral statements and also gave oral consent to a search of his apartment. The search of Defendant's person incident to his arrest yielded the keys to a motor vehicle parked in Defendant's yard; the officers had not observed Defendant operating this motor vehicle, nor were they otherwise aware of any connection between Defendant and the vehicle before the car keys were seized. After seizing the keys and

obtaining information from other law enforcement sources, the officers obtained a warrant to search the vehicle.

II. THE DEFENDANT'S ARREST LACKED PROBABLE CAUSE

It would appear beyond dispute that Defendant was under arrest at the moment he was detained by law enforcement officers in his vehicle, and that Detective Ruggerio signaled to the officers outside to detain Defendant the moment that Lafrance signed for the package. Defendant was ordered to the ground, at gunpoint, and was immediately placed in handcuffs. It is settled law that "[i]f an officer, by means of show of authority, even briefly restrains the liberty of a citizen, … a seizure has occurred" within the meaning of the Fourth Amendment. United States v. Smith, 423 F.3d 25 (1st Cir. 2005). Equally settled is the legal principle that "every arrest, and every seizure having the essential attributes of a formal arrest is unreasonable unless it is supported by probable cause." Michigan v. Summers, 452 US 692, 700 (1981).

The Defendant submits that, at the moment of his arrest, law enforcement officers lacked probable cause to believe that he had committed the crime of conspiracy to possess a controlled substance with intent to deliver. At that moment, the officers knew that Lafrance had signed for the package; they knew that Lafrance and Defendant had arrived at 80 Hawkins Street together as short time before Lafrance signed for the package, and they knew that Defendant was seated in his motor vehicle, a short distance away from the building, when Lafrance signed for the package. Defendant submits that this is quite simply insufficient to establish probable cause to arrest Defendant. If, for example, the officers had not immediately arrested Lafrance, but allowed Lafrance to leave the building, and if she, carrying the package, had then joined Defendant in his

motor vehicle, Defendant agrees that probable cause would exist. However, there was no evidence that the Defendant and Lafrance planned to rendezvous after the delivery, nor was there any evidence that Defendant brought Lafrance to the building for the purpose of receiving the package. Defendant submits that the arresting officers, at the moment of Defendant's arrest, lacked probable cause to detain him and that all evidence seized from his person after his arrest should therefore be suppressed as evidence traceable to the illegal arrest and "fruit of the poisonous tree". Won Sun v. United States, 371 US 471, 487-88 (1963).

## III. DEFENDANT'S ALLEGED CONSENT TO SEARCH THE APARTMENT WAS INVALID

After Defendant was placed in handcuffs outside the building, the arresting officers brought him to the second floor apartment. The officers did not have a warrant to search the apartment. They claim that Defendant gave them consent to search the entire apartment; however, there is no "consent to search" form signed by Defendant, nor is there any other writing memorializing his alleged consent. Furthermore, Defendant speaks minimal English, and has required the assistance of an interpreter throughout these criminal proceedings.

Defendant submits, first, that any consent obtained from him is the fruit of his illegal arrest, and therefore fails to pass Fourth Amendment muster under Wong Sun. Second, Defendant submits that, on the facts herein, the Government cannot satisfy its burden of demonstrating that Defendant voluntarily consented to the search of his apartment, United States v. Luciano, 329 F.3d 1 (1st Cir. 2003), because the coercion inherent in Defendant's illegal arrest and detention vitiates any consent Defendant may have given. See Bumper v. North Carolina, 391 US 543 (1968).

## IV. THE SEARCH OF DEFENDANT'S MOTOR VEHICLE IS INVALID

When the arresting officers searched Defendant's person incident to his arrest, they found, among other things, a key to a Mercedes Benz automobile. If this Court concludes that Defendant's arrest was not supported by probable cause, this key, as well as information regarding Defendant's use of the vehicle obtained by law enforcement officers after locating this key, are "fruit of the poisonous tree" under Wong Sun. Law enforcement officers utilized the seizure of the key and the subsequently-obtained information to obtain a search warrant for the Mercedes Benz. When they executed this warrant, evidence that the Government will seek to introduce against Defendant was found in the vehicle.

In the analogous situation where evidence seized in the course of an illegal search of a person's home is utilized to obtain a search warrant, the First Circuit, in United States v. Dessesaure, 429 F.3d 359 (1st Cir. 2005), has held that a two part test should be applied to determine the admissibility of the evidence seized pursuant to the warrant. First, the trial judge should excise the illegally seized information from the affidavit in support of issuance of the warrant, and determine if the remainder of the affidavit is sufficient to establish probable cause. Second, the trial judge must consider whether law enforcement would have sought the warrant absent the illegally obtained information.

In the instant case, Defendant submits that there was no evidence linking him to the Mercedes Benz until the arresting officers located the key to that vehicle in his pocket, and that only after locating the key did officers generate additional information that allegedly links Defendant to the vehicle. The officers never observed the Defendant in or near the Mercedes, and the only vehicle that they observed him operating was the

Crown Victoria. The simple fact that the Mercedes was parked behind a multi-family building, standing alone, would not be sufficient to alert law enforcement officers to any connection between Defendant and the vehicle. Defendant therefore submits that absent the search of Defendant's person incident to his illegal arrest, no search warrant would have been sought or obtained for the Mercedes, and that the evidence seized from the vehicle should therefore be suppressed.

## V. DEFENDANT'S ALLEGED ORAL STATEMENTS SHOULD BE SUPPRESSED

The arresting officers allege that Defendant made certain incriminating statements after he was arrested, handcuffed, and taken to the second floor apartment at 80 Hawkins Street. Although officers claim that Miranda warnings were given to Defendant, and that he waived his right to remain silent and consented to speak with officers, there is no written memorial of this alleged advisement. A rights form was executed, but this occurred later in the day, at the Lincoln Barracks, and so cannot serve to legitimize questioning of Defendant earlier in the day, at the apartment. In addition, Defendant speaks only minimal English, and has required an interpreter throughout these proceedings. .

Defendant submits that any alleged oral statements obtained by him at the apartment are also "fruit of the poisonous tree" of his illegal arrest and should therefore be excluded from evidence under Wong Sun. In addition, Defendant submits that the Government cannot satisfy this Court that Defendant was fully informed of his rights and that he knowingly, intelligently and voluntarily waived his right to remain silent and spoke with the arresting officers at his apartment. See Colorado v. Connelly, 479 US 157, 168 (1986). Accordingly, Defendant submits that this Court should not permit the

Government to introduce testimony regarding his alleged oral statements made at the apartment.

VI. CONCLUSION

For all of the foregoing reasons, Defendant respectfully requests that the evidence seized from his person at the time of his arrest, the evidence seized from his apartment, the evidence seized from the Mercedes Benz, and his alleged oral statements be excluded from evidence.

JESUS GONZALEZ
Defendant
By His Attorney,

/s/ Judith Crowell, Esq.
128 Dorrance Street
Fourth Floor
Providence, RI 02903
(401) 272-6600

**CERTIFICATION**

I hereby certify that on August 18, 2008, a copy of this Memorandum was e-filed and served via e-file on AUSA Sandra Beckner, 50 Kennedy Plaza, Eighth Floor, Providence, RI 02903.

/s/Judith Crowell, Esq.