IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 07-106-01S |
| | ) | |
| JESUS GONZALEZ | ) | |

GOVERNMENT'S SUPPLEMENTAL TRIAL MEMORANDUM

At the pretrial conference held on August 21, 2008, the Court asked the parties to brief three issues that may arise at trial regarding the admissibility of evidence. The government will address each in turn:

**1. Bank deposit slips and bank records.**

There were two bank deposit slips seized from the defendant's wallet, and one from his Mercedes-Benz. These deposit slips reflect three large cash deposits ($9,000, $9,000, and $2,000) on June 11, 2007, June 28, 2007 and July 16, 2007. The deposits were made into the accounts of three individuals residing in California. According to the bank records subpoenaed and the deposit slips seized, the following deposits were made:

a. On June 11, 2007, $9,000 was deposited into account # xxxxxxxx0031, an account in the name of Virginia Mayorquin, 9400 S. Normandie Ave., Apt. #3, Los Angeles, CA, 90044. The receipt for this deposit was found in the defendant's wallet. Ms. Mayorquin's address is less than 35 miles from the return address on the package containing cocaine and marijuana that was mailed to the defendant's apartment.

b. On June 28, 2007, $9,000 cash was deposited into account #

xxxxxxxx8062, an account in the name of Marylou Arroyo, 215 E. 116th Place, Los Angeles, CA 90061. The receipt for this deposit was found in the defendant's wallet. Ms. Arroyo's address is also less than 35 miles from the return address on the package containing cocaine and marijuana that was mailed to the defendant's apartment.

c. On July 16, 2007, $2,000 cash was deposited into account # xxxxxxxx2199, an account in the name of Edgar Ayala-Campos, 11818 1/4 S. Budlong Ave., Los Angeles, CA 90044. The receipt for this deposit was found in the defendant's Mercedes-Benz. Mr. Ayala-Campos's address is also less than 35 miles from the return address on the package containing cocaine and marijuana that was mailed to the defendant's apartment.

The government contends that this evidence is circumstantial evidence of the conspiracy to distribute narcotics and the defendant's intent to distribute. The package that was sent to the defendant's apartment via DHL contained nearly one kilogram of cocaine and approximately 26 pounds of marijuana. This is over $25,000 worth of merchandise. According to the label, the package was shipped from Exquisite Nails, 8232 Tampa Street, Reseda, California, which is less than 35 miles from the address on each of the three Bank of America accounts. Detectives can testify that the narcotics business is a cash business. They also can testify to the price of a kilogram of cocaine. Based upon this evidence, the government contends that the bank deposit slips and bank records are evidence of an ongoing narcotics conspiracy, and that the cash deposits slips are evidence of payment for narcotics. This inference is further

corroborated by the fact that the defendant told detectives that he was not employed, raising the question as to how he had access to $20,000 worth of cash within five weeks of his arrest. The bank deposit slips and bank records make it more likely that the defendant was involved in a conspiracy to distribute controlled substances. Thus, such evidence is relevant.

Furthermore, there is nothing unfairly prejudicial about this evidence. They are simply business records. The receipts were seized from the defendant's person and vehicle, and like other physical evidence seized, they link the defendant to the conspiracy.

**2. Records Custodian.**

Fed. R. Evid. 902(11) provides for the admission of business records if accompanied by a written declaration of its custodian certifying that the records were (1) made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters; (2) was kept in the course of the regularly conducted activity; and, (3) was made by the regularly conducted activity as a regular practice. To admit business records pursuant to a certificate, the party seeking admission must provide written notice in advance of trial to the adverse party to provide the party with an opportunity to challenge the authenticity of the records.

In this case, the government has provided the defense with the business records it seeks to introduce and the certificates of the custodians in satisfaction of the rule. The

defense nonetheless claims to object to the authenticity of the records, with no reason or explanation.

The admission of business records pursuant to Fed. R. Evid. 902(11) has been held to be proper. See United States v. Ellis, 460 F.3d 920, 927 (7th Cir. 2006) ("[W]e hold that the written certification entered into evidence pursuant to Rule 902(11) is nontestimonial just as the underlying business records are."); see also United States v. Adefehinti, 510 F.3d 319, 328 (D.C. Cir. 2007) (no error in the admission of bank records pursuant to a Rule 902(11) certificate).

The First Circuit has not addressed the issue, although the discussion in United States v. Earle, 488 F.3d 537, 545 (1st Cir. 2007), should prove helpful. In Earle, the Circuit refused to decide the Confrontation Clause issue instead holding that the admission of the Certificate of *Non-Existence* of Records (CNR) was harmless, even if in violation of the Confrontation Clause. See id.. The First Circuit recognized that even under Crawford, business records were common law exceptions to the Confrontation Clause and that certificates of authenticity were admissible at common law. See id. at 544. However, the court recognized the difference between a certificate of authenticity, which is at issue in the case at hand, and a certificate of non-existence of records (CNR), which was at issue in Earle. See id. at 545. That is, a CNR is a document probative in and of itself while the certificate of authenticity merely establishes the validity of a second document. See id.. In other words, a defendant might benefit from cross-examining the searcher who prepared the CNR, while little could be gained from cross-

examining the custodian of a certificate of authenticity since the production of the documents speaks for itself. See id.. Thus, while the First Circuit in Earle did not squarely address the issue before this Court, the discussion in that case seems to support the admission of business records pursuant to a certificate under Fed. R. Evid. 902(11).

The government contends that the certificates meet the requirements of Fed. R. Evid. 902(11) and the defendant has not put forth any evidence or argument contesting the validity of the business records. If the defendant really believes that there is a question as to the authenticity of the records, counsel has ample time to subpoena the records custodians to trial and question them about the records. Under these circumstances, the government seeks to admit the bank records pursuant to the certificates of the custodians of records.

**3. Admissibility of the defendant's cocaine distribution.**

The defendant is charged with conspiring with Kristina LaFrance, and others known and unknown to the grand jury, to distribute and possess with intent to distribute cocaine. The conspiracy is alleged to have begun on a date unknown and end on July 23, 2007, the day of the defendant's arrest. As part of its case-in-chief, the government anticipates that it will call the co-defendant, Kristina LaFrance, who at the defendant's request, signed for the package containing cocaine and marijuana on July 23, 2007. According to Ms. LaFrance, she knew the defendant through her boyfriend, the defendant's brother. She lived with her boyfriend and the defendant for at least a

part of the year prior to their arrest. She may testify that she knew the defendant to be a drug dealer and that she never knew him to have a real job.

Based upon proffer of counsel, the government expects that the defendant may cross-examine Ms. LaFrance about her past cocaine use. If asked, Kristina LaFrance may testify that she used cocaine with the defendant's brother, her boyfriend, and that she and her boyfriend obtained cocaine from the defendant.

The government contends that such evidence is admissible as evidence of the conspiracy and the defendant's intent to distribute. See United States v. Rodriguez, 162 F.3d 135, 143 (1st Cir. 1998) (witness's testimony regarding drug deals engaged in by defendant during life of conspiracy was admissible). Furthermore, such testimony is evidence of the relationship between the conspirators. See United States v. Tse, 375 F.3d 148, 156 (1st Cir. 2004) (evidence of subsequent drug deal engaged in by defendant and witness was admissible to rebut claims of innocent association and to show the relationship between the participants). Also, if the defendant intends to elicit testimony regarding Ms. LaFrance's drug use, then he opens the door to the events surrounding that drug use. See United States v. Touloumis, 771 F.2d 235, 241 (7th Cir. 1985) ("[W]hen a party elicits testimony as to only part of a transaction during cross-examination, the opposing party is permitted to elicit testimony as to the whole transaction on redirect examination in order to advise the jury fully of all the facts surrounding the case); United States v. Allain, 671 F.2d 248, 253 (7th Cir. 1982) (defense counsel's use of past drug transactions to impeach credibility of government witness

opened the door to prosecutor to elicit details of drug transactions as they related to defendant).

"A district court may allow testimony on redirect which clarifies as issue which the defense opened up on cross-examination even when this evidence is otherwise inadmissible." United States v. Catano, 65 F.3d 219, 226 (1st Cir. 1995) (defense counsel's cross-examination of informant about his knowledge of the defendant opened the door to redirect of informant concerning informant's prior employment of defendant in marijuana business). In this case, if the Court were to allow defense counsel to cross-examine Ms. LaFrance regarding her past cocaine use, but not allow the jury to learn the full truth about those activities, then the jury will have an incomplete and misleading view of the facts and the relationship between the co-conspirators.

Respectfully submitted,

UNITED STATES OF AMERICA,

By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U.S. Attorney
New York Bar
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj.gov

CERTIFICATION

I hereby certify that on August 25, 2008, a copy of the within "Government's Supplemental Trial Memorandum" was filed electronically and is available for viewing and downloading from the ECF system.

Electronic notification:

Ms. Judith Crowell
Attorney at Law
128 Dorrance Street
Providence, Rhode Island 02903

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
New York Bar
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj.gov