**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | **CR. NO. 07-106S** |
| | ) | |
| **JESUS GONZALEZ** | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS**

The government respectfully urges the Court to deny the defendant's motion to suppress because the agents had probable cause to arrest the defendant, the defendant consented to the search of 80 Hawkins Street, the defendant's statements were made after he was advised of his rights under the Fifth Amendment, and the search of the Mercedes was supported by a valid warrant.

## FACTS

On Saturday, July 21, 2007, Detective Richard Ruggiero with the High Intensity Drug Trafficking Area (HIDTA) Taskforce received information from the Cranston Police Department that employees at DHL, a package delivery service, had identified a partially opened package containing marijuana. DHL had received a telephone call from a male stating that he was the sender of a package with DHL package identification number "65274045244." DHL located the package and identified the sender as, "Exquisite Inc., 8233 Tampa Avenue, Reseda, CA 91335" and the addressee as, "Anna Ohoven, 80 Hawkins Street, 2nd floor Providence, Rhode Island." The caller asked why his package had not been delivered. When he was told that the package was at the Cranston DHL office he stated that someone would pick it up. He later asked if

DHL would deliver the package on Monday, July 23, 2007. DHL informed the caller that it would be delivered between 9 a.m. and 11 a.m. on July 23, 2007.

On Monday, July 23, 2007, Detective Richard Ruggiero, dressed as a DHL employee, attempted to deliver the package, which contained approximately one kilogram of cocaine and 20 pounds of marihuana, to the addressee, Anna Ohoven, at 80 Hawkins Street, 2nd Floor, Providence, RI. Detective Ruggiero knocked on the door of 80 Hawkins Street, 2nd floor, but there was no response. A male, later identified as JESUS M. GONZALEZ, came up the stairs carrying a bag and Detective Ruggiero asked if Anna was there. GONZALEZ stated that she was at work. GONZALEZ opened the 2nd floor apartment and Detective Ruggiero noticed that it appeared vacant. He informed Detective Ruggiero that Anna was his cousin, and that he lived with her in the apartment. GONZALEZ offered to sign for the package, but Detective Ruggiero refused. GONZALEZ then called a woman on his cell phone and spoke to her in Spanish. He then handed Detective Ruggiero his cell phone and spoke with a female who identified herself as "Anna." She said that she would be at the residence to receive the package at noon. Detective Ruggiero left with the package.

Surveillance noted that GONZALEZ then drove away and returned with an unidentified male. The unidentified male was driving a red BMW. The unidentified male left in the BMW and GONZALEZ left in his Crown Victoria car. GONZALEZ came back with a female, later identified as KRISTINA LAFRANCE. GONZALEZ and LAFRANCE entered the 2nd floor apartment. Shortly thereafter, GONZALEZ left

again and drove approximately one block away where he waited in the Crown Victoria. From where his vehicle was parked he had a view of 80 Hawkins Street.

At approximately 12:10 p.m., Detective Ruggiero knocked on the apartment door and LAFRANCE answered. She signed for the package after spelling out the last name "Ohoben" and took the package into the apartment. LAFRANCE was immediately detained and Mirandized. She agreed to a search of the apartment which revealed a handwritten slip of paper with the DHL package identification number and the name "Anna Ohoben" written on the paper several times, as if someone had practiced the signature. The signatures on the paper were the same as the signature on the DHL package. LAFRANCE admitted that she had been paid $100 to accept the package. She was found to be in possession of $100 cash. She stated that GONZALEZ was the brother of her boyfriend.

When Detective Ruggiero delivered the package to LAFRANCE, GONZALEZ was detained and brought to 80 Hawkins Street. At 80 Hawkins Street, SGT Dorian Rave advised GONZALEZ of his Miranda rights. He told SGT Rave and Detective Sanzi that he was parked down the street having a lemonade. He denied being at 80 Hawkins Street and he stated that he only lived on Douglas Avenue and was not presently employed.

At some point, GONZALEZ consented to a search of the apartment and he said that he rented the apartment.

Prior to taking GONZALEZ to the state police barracks, SGT Rave conducted a

patdown search of GONZALEZ, during which SGT Rave found a slip of paper in GONZALEZ's front pocket. Written on the slip of paper was the DHL package identification number and the phone number to DHL. GONZALEZ also had the keys to the apartment on his person.

During a search of the apartment, detectives found paperwork in the name of Jesus Gonzalez, glad sandwich bags, a coffee grinder with the residue of a white, cutting agent, a notebook, $3,250 in U.S. currency, and money wrappers, among other items. GONZALEZ's fingerprints were on the coffee grinder and the sandwich boxes.

On July 27, 2007, Detective Ruggiero executed a search warrant for GONZALEZ's Merecedes-Benz. While searching the car, officers found paperwork in the name of GONZALEZ, a wooden kilogram press with paperwork in the name of GONZALEZ, a bag of cutting agent, several electrical outlets with wooden blocks and a c-clamp, a wooden mortar, and a Bank of America receipt. This receipt reflects a $2,000 cash deposit on July 16, 2007. The electrical outlets with the wooden blocks appeared to be a drug press. One of the outlets contained cocaine residue.

## ARGUMENT

### I. THE DEFENDANT'S ARREST WAS SUPPORTED BY PROBABLE CAUSE

Probable cause for an arrest exists if the collective knowledge of the officers involved was sufficient to lead a prudent person to believe that the defendant was committing or had committed an offense. See United States v. Link, 238 F.3d 106, 109 (1st Cir. 2001). Probability, not proof beyond a reasonable doubt, is the touchstone of

the probable cause determination. See United States v. Aguirre, 839 F.2d 854, 857-58 (1st Cir. 1988). The focus is on the likelihood, not certitude, of criminal activity. See Acosta v. Ames Department Stores, Inc., 386 F.3d 5, 9 (1st Cir. 2004). Thus, the officer's conclusion need not be ironclad, or even highly probable. See United States v. Winchenbach, 197 F.3d 548, 555-56 (1st Cir. 1999). Nor must the officer's conclusions be more likely true than false. See United States v. Feliz, 182 F.3d 82, 87 (1st Cir. 1999). Rather, the arrest is justified if under a totality of the circumstances known at the time, the officers had information upon which a "'reasonably prudent person would believe the suspect had committed or was committing a crime.'" United States v. Vongkaysone, 434 F.3d 68, 73 (1st Cir. 2006) (quoting United States v. Young, 105 F.3d 1, 6 (1st Cir. 1997)).

At the time the defendant was arrested, the detectives knew that (1) a male had called DHL regarding the delivery of the package containing cocaine and marijuana; (2) that GONZALEZ had attempted to accept delivery for the package; (3) that he had keys to 80 Hawkins Street, 2nd Floor; (4) that he claimed to live at 80 Hawkins Street, 2nd Floor with Anna Ohoven, the addressee on the package; (5) that the interior of 80 Hawkins Street, 2nd Floor appeared to be vacant; (6) that GONZALEZ called someone who claimed to be Anna Ohoven, spoke to that person in Spanish, and then handed the phone to Detective Ruggiero; (7) that the woman claiming to be Anna Ohoven agreed to sign for the package containing cocaine and marijuana; (8) that GONZALEZ brought LAFRANCE to 80 Hawkins Street; (9) that GONZALEZ stayed with LAFRANCE for a

short period of time before leaving the residence; (10) that GONZALEZ positioned himself in a manner that allowed him to watch the delivery of the package; and (11) that LAFRANCE accepted delivery of the narcotics package, misspelling "Ohoven" as "Ohoben."

Based upon these facts, a reasonably prudent person, and especially an experienced narcotics detective familiar with the tactics used by drug dealers, could easily conclude that GONZALEZ was committing a crime. The defendant's willingness to sign for a package containing over $25,000 worth of narcotics is a substantial step towards probable cause in and of itself, as common sense and the detectives' experience would suggest to them that a drug dealer would not ship such a large and valuable amount of merchandise to an unknowing party. See, e.g., United States v. DiMarzo, 80 F.3d 656, 659 (1st Cir.1996) (agent testified that based upon his experience innocent observers are not invited into drug transactions). Furthermore, Detective Ruggiero had been informed that a male caller was asking about the package. The fact that GONZALEZ had keys to the apartment where the package was to be delivered, claimed to live there with the addressee, and that the apartment appeared to be vacant, further bolsters the detectives' conclusion that GONZALEZ was involved in a conspiracy. When GONZALEZ was observed bringing a female to the apartment and then exiting, but positioning himself in a location to watch the delivery, the detectives had ample reason to conclude that GONZALEZ was involved with the package. Finally, when the woman brought to the apartment by GONZALEZ signed for the package containing

over $25,000 worth of narcotics, the direct and circumstantial evidence known by the arresting officers would be sufficient to convict GONZALEZ, not simply arrest him.

Indeed, arrests have been upheld with far less facts known at the time. See, e.g., Vongkaysone, 434 F.3d at 75 (upholding the arrest and search of the defendants' vehicle based upon the information from the proffer of a first-time informant, which was corroborated by the surveillance of a meeting by agents); United States v. Funches, 327 F.3d 582, 586-87 (7th Cir. 2003) (upholding the arrest and search of the defendants and their vehicles based upon the experienced agents' observations of an otherwise unexplainable meeting recognized as common in drug deals); United States v. Reyes, 225 F.3d 71, 75-76 (1st Cir. 2000) (finding probable cause to arrest defendant when defendant was seen exiting and entering residence with known and suspected drug dealers and defendant acted in a manner consistent with prior suspected drug activity); United States v. Dialo, 29 F.3d 23, 26 (1st Cir. 1993) (upholding warrantless arrest based upon prior surveillance, tip from informant that defendants would be making delivery that night, and suspicious activity of defendants, even though the informant's tip proved to be partially inaccurate). Considering all of the facts known to the detectives, they had probable cause to arrest GONZALEZ.

## II. THE SEARCH OF THE APARTMENT WAS PROPER.

"[P]olice need not seek a warrant where 'voluntary consent has been obtained, either from the individual whose property is searched, or from a third party who possesses common authority over the premises.'" United States v. Meada, 408 F.3d 14,

20 (1st Cir. 2005) (quoting Illinois v. Rodriguez, 497 U.S. 177, 181 (1990)). "Common authority is . . . not to be implied from the mere property interest a third party has . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." United States v. Matlock, 415 U.S. 164, 171 at n.7 (1974); see Frazier v. Cupp, 394 U.S. 731, 740 (1969)("Since Rawls was a joint user of the bag, he clearly had authority to consent to its search."); Meada, 408 F.3d at 21. Furthermore, "[e]ven if a person does not in fact have such authority, police may rely on her consent if they reasonably believe that she has such authority." Meada, 408 F.3d at id.. That is, in the absence of actual authority to consent, apparent authority will suffice. See Illinois v. Rodriguez, 497 U.S. 177, 188 (1990).

LAFRANCE and GONZALEZ both consented to a search the 2nd Floor apartment at 80 Hawkins Street. Prior to the controlled delivery, GONZALEZ told Detective Ruggiero that Anna Ohoven lived at the address. GONZALEZ also had Detective Ruggiero speak with a woman who claimed to be Anna Ohoven and who stated that she would be at the apartment at noon to accept delivery. Then, when Detective Ruggiero delivered the package to the woman now known to be LAFRANCE, she was alone in the apartment. Based upon the address on the package, GONZALEZ's own statements, and the fact that LAFRANCE was alone in the apartment to accept the

package, at a minimum, it was reasonable for Detective Ruggiero to conclude that LAFRANCE had authority to consent to the search of the premises.

Even if the Court were to disagree, the detectives obtained consent from GONZALEZ himself. A search conducted pursuant to a valid consent is constitutionally permissible even in the absence of probable cause. See Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). "In order to be effective, a person's consent to a search must be freely and voluntarily given." United States v. Coraine, 198 F.3d 306, 309 (1st Cir. 1999). "Voluntariness turns on a number of factors, including the person's 'age, education, experience, intelligence, and knowledge of the right to withhold consent.'" Id. (quoting United States v. Barnett, 989 F.2d 546, 555 (1st Cir. 1993)). "The court can also consider 'whether the consenting party was advised of his or her constitutional rights and whether permission to search was obtained by coercive means or under inherently coercive circumstances.'" Id..

GONZALEZ was immediately brought to 80 Hawkins Street, where he was interviewed. He denied being at 80 Hawkins Street at any time or with any one, and he claimed to live on Douglas Avenue. At some point, GONZALEZ provided detectives with consent to search the residence and stated that he rented the apartment. He was 41 years old at the time, and there is no evidence that he was coerced or his will overborne. Thus, the search of 80 Hawkins Street, 2nd Floor was valid.

## III. DEFENDANT VOLUNTARILY WAIVED HIS FIFTH AMENDMENT RIGHTS

As in the case of a challenge to the voluntariness of the defendant's consent, an

admission is considered voluntary unless the "will of the defendant was overborne so that the statement was not his free and voluntary act." United States v. Jackson, 918 F.2d 236, 241 (1st Cir. 1990). "After assessing the totality of the circumstances attending a defendant's confession, see, e.g., 18 U.S.C. § 3501(b), [the Circuit Court] will affirm the denial of a motion to suppress provided the government proved, by a mere preponderance of the evidence, that there was a valid waiver." United States v. Rojas-Tapia, 446 F.3d 1, 5 (1st Cir. 2006); see United States v. Palmer, 203 F.3d 55, 62 (1st Cir. 2000). A valid waiver may be implied and need not consist of an express statement. See North Carolina v. Butler, 441 U.S. 369, 373-74 (1979); Bui v. DiPaolo, 170 F.3d 232, 240 (1st Cir. 1999).

The evidence will show that GONZALEZ made statements to the detectives voluntarily. SGT Rave advised GONZALEZ of his Miranda rights in Spanish, and he told GONZALEZ that he was under arrest for conspiracy to possess marijuana and cocaine with the intent to deliver. GONZALEZ told detectives that he was only parked down the road having a lemonade. He denied being at 80 Hawkins Street at anytime or with anyone. He said he lived on Douglas Avenue and that he did not have a job. When GONZALEZ was taken back to the Lincoln Woods Barracks, he was presented with a Spanish rights form, which he read and signed. He told detectives that he had nothing that he wanted to say to the police. The interview was terminated.

GONZALEZ was advised of his rights in Spanish and the Spanish speaking detective, SGT Rave, participated in the interview. Thus, there can be no argument that

GONZALEZ lacked understanding. Furthermore, as has been seen in the Court room numerous times over the last year, the defendant speaks and understands English. He has responded to questions of the Court before the court interpreter completes the translation and he has responded in English on at least one occasion.

Further evidencing the voluntariness of GONZALEZ's statements are the nature of the statements themselves. They are self-serving denials, albeit easily disproved by the government. The lemonade explanation has been used several times in the defendant's court filings, most recently in a letter dated August 15, 2008 and entitled "Statemen" (attached to "Motion to a Hablas Corpus"). Clearly these are statements GONZALEZ wanted the government and now the Court to hear.

## IV. THE SEARCH WARRANT FOR THE MERCEDES IS VALID EVEN IF THE COURT WERE TO DETERMINE THAT THE DEFENDANT WAS UNLAWFULLY ARRESTED.

Even if the Court were to consider the GONZALEZ's arrest illegal, when the evidence seized from his person is struck from the affidavit, the warrant remains sufficient to establish probable cause. See United States v. Dessesaure, 429 F.3d 359, 367-69 (1st Cir. 2005) (setting forth the analytical framework when a challenge is made to a warrant containing tainted information). Since the "'search pursuant to [the] warrant was in fact a genuinely independent source,'" see id. at 369, that is, the decision to seek the warrant was not prompted by the fruits of an allegedly illegal arrest, the warrant justifies the search of the Mercedes-Benz.

**A. PROBABLE CAUSE**

The affidavit contained sufficient evidence that a crime had been committed and that evidence of the crime would be found at the place to be searched. See Illinois v. Gates, 462 U.S. 213, 238 (1983)); Feliz, 182 F.3d at 87 ("The criterion . . . is whether the facts presented in the affidavit would 'warrant a man of reasonable caution' to believe that evidence of crime will be found."); United States v. Barnard, 299 F.3d 90, 93 (1st Cir. 2002) (discussing the method of evaluating probable cause when the affidavit relies upon unnamed informants).

In this case, even without the paper seized from GONZALEZ's pocket during his arrest, the warrant was sufficient to support a finding of probable cause. All of the other events occurring on July 23, 2007, aside from GONZALEZ's arrest, are not suppressible. When these facts are coupled with the information from the DEA Taskforce investigation and the Providence Police Department investigation that are included in the warrant, there is ample evidence to support a finding of probable cause.

**B. WHETHER THE WARRANT WAS PROMPTED BY THE ILLEGAL SEARCH**

Likewise, it seems probable that the officers would have sought a warrant even without the arrest of GONZALEZ. See Murray v. United States, 487 U.S. 533, 542 (1988); Dessesaure, 429 F.3d at 369. To answer this question it necessarily requires answering a hypothetical, since part of the evidence relied upon in the affidavit was discovered pursuant to the controlled delivery of the package and is not suppressible. As noted by the First Circuit in Dessesaure, 429 F.3d at 369, Murray suggested that the

analysis was a subjective one. However, Murray was decided prior to Devenpeck v. Alford, 543 U.S. 146 (2004), and Whren v. United States, 517 U.S. 806 (1996), both cases which clearly eschewed the use of subjective intent in Fourth Amendment analyses. See Dessesaure, 429 F.3d at 369 & n.9. Nonetheless, the First Circuit in Dessesaure, 429 F.3d at 369, considered the subjective intent of the officers by objective means. The district court cases applying Dessesaure have followed this lead. See, e.g., United States v. Stierhoff, 477 F.Supp.2d 423, 449 (D.R.I. 2007); United States v. Zak, 476 F.Supp.2d 29, 38 (D.Mass. 2007).

In her motion, defense counsel argues that the discovery of a Mercedes key prompted the search warrant; however, in his report Detective Ruggiero indicates that he did not have keys to the Mercedes. Furthermore, given the events of July 23, 2007 that are not suppressible, namely the controlled delivery and the statements of LAFRANCE, and the active investigations being conducted separately by the DEA Taskforce and the Providence Police Department, the Court can conclude that the detectives would have sought the warrant even without knowledge of the evidence seized as a result of the defendant's arrest. GONZALEZ offers no evidence showing the DEA investigation or the Providence Police Department investigation had stalled or were at a "dead-end." With the events of July 23, 2007 added into the mix, it is objectively apparent that a warrant for the Mercedes would have been sought.

## CONCLUSION

For all the foregoing reasons, GONZALEZ's arrest was valid and the evidence against him admissible. As such, his motion should be denied.

Respectfully submitted,

UNITED STATES OF AMERICA,
By its Attorneys,

ROBERT C. CORRENTE
United States Attorney

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj

**CERTIFICATE OF SERVICE**

I hereby certify that on August 25, 2008, a copy of the within "Government's Response to Defendant's Motion to Suppress" was filed electronically and is available for viewing and downloading from the ECF system.

Electronic notification:

Ms. Judith Crowell
Attorney at Law
128 Dorrance Street
Providence, Rhode Island 02903

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj.gov